IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br><br>vs.<br><br><br>ROBERT G. LUSTYIK, JR., and<br>JOHANNES W. THALER,<br><br>Defendants.[1] | FINAL FORFEITURE ORDER<br>AND<br>MEMORANDUM DECISION<br><br><br>Case No. 2:12-CR-645-TC-DBP |

On March 26, 2015, the court issued a Preliminary Forfeiture Order (Doc. No. 1026)

under Federal Rule of Criminal Procedure 32.2(b)(2) in preparation for the March 30, 2015

forfeiture hearing and sentencing of convicted Co-Defendants Robert G. Lustyik, Jr., and

Johannes W. Thaler.  As noted in the preliminary order, the court reviewed the Government's

Motion for Preliminary Order of Forfeiture and accompanying exhibits,[2] Defendant Robert

Lustyik, Jr.'s Opposition[3] (in which Co-Defendant Johannes Thaler joins[4]), and the

---

[1] Co-Defendant Michael Taylor is not subject to this order because the Government is not seeking forfeiture against him in this case.  (See U.S.'s Mot. for Preliminary Order of Forfeiture (Doc. No. 930) at p. 7 n.2.)

[2] Doc. No. 930.

[3] Doc. No. 955.

[4] See Notice of Joinder by Johannes W. Thaler (Doc. No. 956).

Government's Reply[5] and its accompanying exhibits.

The court then held a criminal forfeiture hearing on the morning of March 30, 2015, during which the court heard oral argument from all interested parties concerning the preliminary order. Based on the Government's arguments at the hearing, and for the reasons set forth in the Preliminary Forfeiture Order, the court issues this Final Forfeiture Order[6] under Federal Rule of Criminal Procedure 32.2.

By this order, the United States is permitted to seek forfeiture of any property, real or personal, which constitutes or is derived from proceeds traceable to the crimes for which the Defendants have been convicted and to obtain a money judgment in the amount of $70,000.00.

I.    **Procedural and Factual Background**

For the purpose of expediency, and because of the court's and the parties' familiarity with the case, this order provides a limited procedural and factual background. More detailed information may be found in the United States' Motion for Preliminary Order of Forfeiture.[7]

Co-Defendants Robert Lustyik, Jr. and Johannes Thaler, along with a third defendant, Michael Taylor (who is not subject to this order), were charged in 2012 with honest services wire fraud, obstruction of the due administration of justice, obstruction of an agency proceeding, and conspiracy to commit bribery and obstruction of justice. The Indictment also contained a forfeiture allegation notifying the Defendants that the Government would seek forfeiture in the

---

[5] Doc. No. 964.

[6] This order includes necessary modifications to the Preliminary Forfeiture Order that the Government requested during the hearing.

[7] Doc. No. 930.

2

event the Defendants were convicted.  In Fall 2014, on the eve of trial, Mr. Lustyik and Mr.

Thaler each pleaded guilty to one or more counts in the Indictment.

Mr. Lustyik is a former FBI agent and Mr. Thaler is Mr. Lustyik's childhood friend.  The

Indictment alleged a scheme by the Defendants in which Mr. Lustyik and Mr. Thaler would work

to derail a criminal investigation into Mr. Taylor's military contract procurement activities in

Afghanistan in exchange for money and promises by Mr. Taylor of lucrative business

opportunities in the Middle East set up by Mr. Taylor.  Mr. Taylor was to pay Mr. Lustyik and

Mr. Thaler, in part, through his contacts in the Middle East to procure energy contracts for wind

turbines and other types of power generation.

Part of the scheme included the creation of the entity Blue Meadow Energy as a

mechanism to provide financial benefits to Mr. Lustyik and Mr. Thaler without tipping off law

enforcement authorities.  The involvement of Mr. Lustyik, as an FBI agent, would, at a

minimum, raise unwelcome suspicions.  To avoid detection, Mr. Lustyik was a silent partner in

the business, but Mr. Thaler and Mr. Taylor had a visible role in the company.  (Information

about the role that each of the three Defendants played in the scheme is set forth in the

Government's memorandum, and the court will not repeat that here.)

**A.     $10,000 Payment from Mr. Taylor to Mr. Thaler and Mr. Lustyik.**

As part of the scheme, Mr. Thaler traveled to Lebanon in March 2012 to take care of Blue

Meadow Energy business (which the Government has shown by a preponderance of evidence

was created as a means to carry out the Defendants' criminal activities).  Before the trip to

Lebanon, Mr. Thaler sent Mr. Lustyik a text message to tell him that he had "[j]ust talked to

[Taylor].  He told me to bring my bank wire transfer numbers to Lebanon."  (Ex. 1 at 2.)  Mr.

3

Lustyik responded: "YES. He is giving me money 'for [Lustyik's minor daughter's] surgery.'" (Id.)

Mr. Thaler then emailed Mr. Taylor his bank wire transfer information.  (See Ex. 2 (email from J. Thaler to M. Taylor).)  On March 6, 2012, the day Mr. Thaler left for Lebanon, Mr. Lustyik sent him a text cautioning him, "[d]on't forget to mention to MT how hard I'm working on getting his shit pushed aside and how tough I'm having it with [Lustyik's minor daughter's] recent surgeries."  (Ex. 1 at 4.)  On March 15, 2012, Mr. Thaler sent a text message to Mr. Lustyik to tell him, "Capt put 10 in the account today. Won't be able to access it until Monday." (Id. at 12.)  On March 19, 2012, $10,000 was transferred into Mr. Thaler's account as a result of a wire directed by Mr. Taylor.  (See Exs. 1, 3, and 4.)

In a text message dated March 26, 2012, Mr. Lustyik asked Mr. Thaler, "Hey is there any of the money left that Taylor tried to give me?"  Mr. Thaler responded, "[a]bout $2000." (Ex. 1 at 13.)  On March 27, 2012, Mr. Lustyik and Mr. Thaler discussed in a text message plans to meet that evening.  Mr. Lustyik asked Mr. Thaler if he could "get 2 cash?"  (Ex. 1 at 14.)  Mr. Thaler withdrew $2,000 in cash from the account where Mr. Taylor had the money transferred. (Ex. 3 at 7 (J. Thaler bank account records).)   He told Mr. Lustyik in a text message that he was "[j]ust leaving the bank" and will "be there in five minutes."  (Ex. 1 at 14.)

**B.      $60,000 Payment to Blue Meadow Energy**

As part of Mr. Lustyik's payment, Mr. Taylor offered to pay Mr. Lustyik a salary in connection with a business deal involving Blue Meadow Energy wind turbines.  (See Ex. 4 (Memorandum of Interview of M. Taylor).)  Mr. Taylor kept Mr. Lustyik informed about the wind turbines, because Mr. Taylor wanted to make sure that Mr. Lustyik was taking steps to shut

4

down the Utah case.  (See id.)

Mr. Taylor regularly held himself out as the president of Blue Meadow Energy, established a business address and telephone number for the company, and instructed an associate, Michael Feldman, about taking care of administrative matters.  (See Exs. 6, 8, and 9.) Mr. Lustyik, to conceal his involvement, was a silent partner in the business, but the others informed him of the progress of the business, and sought his input on Blue Meadow Energy matters, including investment proposals.

Mr. Lustyik became even more involved in Blue Meadow Energy in August 2012. On August 15, 2012, Mr. Feldman emailed Mr. Lustyik's friend and orthopedist, John Galeno, about making an investment in Blue Meadow Energy.  (See Ex. 16 (email from M. Feldman).) Mr. Feldman copied Mr. Lustyik and Mr. Thaler on the email, and told Dr. Galeno that "Bob [Mr. Lustyik] thought you might be interested in learning about" Blue Meadow Energy.  (Id.) On August 28, 2012, Dr. Galeno wrote a check for $60,000 to Blue Meadow Energy, which was thereafter deposited into a Blue Meadow Energy account. (Ex. 17 at 3, 7 (Blue Meadow Energy bank account records).)  Mr. Feldman sent a draft receipt for the investment to Mr. Lustyik for his approval before sending it to Dr. Galeno.  (See Ex. 18 (email from R. Lustyik to M. Feldman and J. Thaler).)  Mr. Lustyik responded to Mr. Feldman and Mr. Thaler that the receipt is "[g]ood to go."  (Id.)

On September 7, 2012, $26,000 in cash was withdrawn from a Blue Meadow Energy bank account into which Dr. Galeno's check was deposited.  (See Ex. 17 at 10.)  Mr. Lustyik has acknowledged that he received that $26,000.  While this money was purportedly a loan to Mr. Lustyik to pay for his daughter's medical expenses, no record of the loan, its terms, or a

repayment plan was ever documented.  After Mr. Lustyik was arrested on a complaint but before

he was indicted, he had a friend return $26,000 in cash to Mr. Feldman.

## II.    Analysis

The Government seeks forfeiture in this case pursuant to 18 U.S.C. § 981(a)(1)(C) and 28

U.S.C. § 2461(c), which together authorize the criminal forfeiture of the proceeds of honest

services wire fraud, obstruction of the due administration of justice, and conspiracy to commit

bribery or obstruction of the due administrative of justice.  See, e.g., United States v. Yass, 636

F. Supp. 2d 1177, 1178 n.1 (D. Kan. 2009) ("Section 2461 . . . acts as a 'gap filling' or 'bridging'

provision that grafts civil forfeiture provisions, like section 981, onto criminal proceedings in

certain circumstances").  See also 18 U.S.C. §§ 981(a)(1)(C), 1956(c)(7)(A), 1961(1) (read in

combination, these sections authorize criminal forfeiture for bribery, wire fraud, and obstruction

of justice).

Criminal forfeiture is a mandatory part of Mr. Lustyik's and Mr. Thaler's sentences for

their convictions in this case.  United States v. McGinty, 610 F.3d 1242, 1246 (10th Cir. 2010).

See also 28 U.S.C. § 2461(c) ("the court shall order the forfeiture of the property as part of the

sentence" in a criminal case involving bribery, wire fraud, and obstruction of justice).  These

criminal forfeiture proceedings are governed by 21 U.S.C. § 853 and Rule 32.2 of the Federal

Rules of Criminal Procedure.  28 U.S.C. § 2461(c); United States v. Brinton, 880 F. Supp. 2d

1158, 1159 (D. Utah 2012).

Here the Government seeks forfeiture in the form of a money judgment.  The

Government bears the burden of establishing the amount of the money judgment by a

preponderance of the evidence.  United States v. Bader, 678 F.3d 858, 893 (10th Cir. 2012), cert.

denied, 133 S. Ct. 355 (2012).  It is the court's job to "determine the amount of money that the defendant will be ordered to pay."  Rule 32.2(b)(1)(A).

Mr. Lustyik and Mr. Thaler must forfeit to the United States any property "which constitutes or is derived from proceeds traceable to" the fraud schemes for which they were convicted.  18 U.S.C. § 981(a)(1)(C).  "[T]he term 'proceeds' means property of any kind obtained directly or indirectly, as the result of the commission of the offense giving rise to forfeiture, and any property traceable thereto, and is not limited to the net gain or profit realized from the offense."  Id. § 981(a)(2)(A).  "In other words, proceeds are property that a person would not have but for the criminal offense."  United States v. Yass, 636 F. Supp. 2d 1177, 1184 (D. Kan. 2009) (quotations omitted).

For co-conspirators, "the proper standard for criminal forfeiture . . . encompasses joint and several liability for gross proceeds generated under a fraud scheme."  Yass, 636 F. Supp. 2d at 1186.  Moreover, Mr. Lustyik's and Mr. Thaler's forfeiture liability extends to the entire scheme, not just proceeds generated by the particular conduct alleged in the indictment.  See id.

Based on the evidence before the court, and as described below, the court finds, based on a preponderance of evidence, that Mr. Lustyik and Mr. Thaler are jointly and severally liable for $70,000.  This order will become final as to Mr. Lustyik and Mr. Thaler at the time of sentencing, as set forth in Federal Rule of Criminal Procedure 32.2(b)(4)(A).

### A.    The Proceeds Equal $70,000.00.

1.    The $10,000 Payment to Mr. Thaler is "Proceeds."

The $10,000 payment to Mr. Thaler is proceeds because it was a payment, directed by Mr. Taylor, to Mr. Thaler to pay Mr. Lustyik for the work he was doing to stop the investigation

of  Mr. Taylor.  It was the bribe in the conspiracy to bribe.  As discussed above and in the

Government's motion, Mr. Thaler and Mr. Lustyik understood the money to be from Mr. Taylor

for Mr. Lustyik.  After the money was transferred to Mr. Thaler's account, Mr. Thaler provided

$2,000 to Mr. Lustyik and kept the rest for himself.

The Defendants contend that only $2,000 of the $10,000 March 2012 bribe is forfeitable

because it was a "consulting" fee and Mr. Thaler's costs incurred on his trip to Lebanon should

be deductible.  (Lustyik's Opp'n (Doc. No. 955) at 2-3.)  The evidence in the record

demonstrates that this money was not for consulting fees but was instead bribe money for

Lustyik.

As an initial matter, neither Mr. Lustyik nor Mr. Thaler had any expertise in wind energy.

In a government interview with Mr. Taylor, he said that the transferred money was for Lustyik's

personal bills, not consulting fees (Exhibit 4 at 3, 5).  As admitted by Mr. Thaler in his plea

agreement, he was a conduit between Mr. Taylor and Mr. Lustyik for things of value, and that as

an overt act in the conspiracy (as opposed to some legitimate business purpose), Mr. Taylor

caused $10,000 to be transferred into Mr. Thaler's bank account. (Doc. 904, § 5 referring to Doc.

39, §§ 14, 30).  The fact that Mr. Lustyik and Mr. Thaler believed the $10,000 dollars to be a

bribe is confirmed in the Defendants' contemporaneous text and email correspondence. (Doc.

930 at 4.)  For example, before Mr. Thaler went to Lebanon, he sent a text message to Mr.

Lustyik to tell him, "Just talked to [Taylor]. He told me to bring my bank wire transfer numbers

to Lebanon" to which Mr. Lustyik replied, "YES. He is giving me money "for [Lustyik's

daughter's] surgery." (Ex. 1 at 2.)

Where the illegal conduct is a payment to a government official in exchange for an

official action, the entire bribe amount is forfeitable as proceeds of the crime and expenses are not deductible.  See 18 U.S.C. § 981(a)(1)(C) (any property that "constitutes or is derived from proceeds traceable to a violation" of enumerated offenses is forfeitable); 18 U.S.C. § 981(a)(2) (defining "proceeds" to include proceeds from inherently illegal activities which are "not limited to the net gain or profit realized from the offense").  In this case, the proceeds came from "inherently illegal activities."  Mr. Lustyik was selling his government position; he was selling his ability to shut down a criminal investigation into Mr. Taylor.  The proceeds were not generated by an otherwise lawful service.  It was a bribe, and costs cannot be deducted.

2.      The $60,000 Investment in Blue Meadow Energy Is "Proceeds."

Mr. Lustyik was paid in "business opportunities."  The $60,000 investment in Blue Meadow Energy is proceeds because the company was a central part of the payment scheme set in motion by Mr. Taylor to compensate Mr. Lustyik and Mr. Thaler for their illegal services.  Blue Meadow Energy was a means to disguise compensation for Mr. Lustyik and Mr. Thaler to avoid law enforcement detection.

Indeed, Mr. Lustyik, Mr. Thaler, and Mr. Lustyik's contact, Dr. Galeno (the Government does not argue that Dr. Galeno was a participant in the scheme), would not have been involved in the investment if not for the illegal activity.  The illegal actions spurred the business's creation and any subsequent investments, including legitimate investments.  The $60,000 investment was a direct result of the conspiracy to commit illegal activities, and so that money is forfeitable.

Contrary to Defendants' argument, it does not matter that the money was not yet in Mr. Lustyik's or Mr. Thaler's personal possession.  "Funds obtained through a fraudulent scheme become 'proceeds' of the fraud regardless of whether the defendant has yet received the benefit

9

of the funds." United States v. Emor, 850 F. Supp. 2d 176, 217 (D.D.C. 2012); see also United States v. Evanson, Case No. 2:05-CR-805-TC, 2008 WL 3107332, at *3 (D. Utah Aug. 4, 2008) ("The proceeds of the crime are always forfeitable in a criminal case; it is not necessary to show that the money ever legally belonged to the defendant.").

Also, the Defendants unpersuasively downplay Mr. Taylor's role in Blue Meadow Energy, going so far as to argue that Mr. Taylor departed from the company.  (Def.'s Opp'n (Doc. No. 955) at 3.)  Although Mr. Taylor was not directly involved in the $60,000 investment, he knew that he would benefit from any funds that flowed through Blue Meadow Energy to Mr. Lustyik, which is why he helped establish the company and sought so many contracts on its behalf.  And, as described above, Mr. Taylor was deeply involved and directed how day-to-day operations of Blue Meadow Energy were conducted.  Indeed, the day after Dr. Galeno invested the $60,000, Mr. Taylor signed, as Blue Meadow Energy's President, an agreement between Orascom and Blue Meadow Energy for power generation projects in Iraq.  (See Ex. 7.)

Further, it was not necessary that Mr. Taylor be at the meetings with Mr. Lustyik, Mr. Feldman, and Dr. Galeno.  The creation of Blue Meadow Energy was part of the scheme to create business opportunities for Mr. Lustyik as payment for Mr. Lustyik ending the Utah investigation. Even if Blue Meadow Energy eventually became legitimate, it had fraudulent beginnings and would not exist but for those fraudulent beginnings.  That makes the entire business forfeitable.

Defendants attempt to minimize Mr. Lustyik's role in Blue Meadow Energy by arguing that he had neither control over nor interest in Blue Meadow Energy.  The facts contradict the Defendants' characterization of Mr. Lustyik's role.  Although Mr. Lustyik may have been a silent partner, he was certainly involved in the business.  For instance, Mr. Lustyik and Mr. Feldman

personally met with Dr. Galeno to describe Blue Meadow Energy and offer an investment opportunity to Dr. Galeno.  Based on the presentation, Dr. Galeno thought that the investment opportunity related to a company Mr. Lustyik was starting with Mr. Feldman and a few others.  It is unlikely that the $60,000 investment would have occurred but for Mr. Lustyik, because Dr. Galeno did not previously know Mr. Feldman.  (Ex. 20 at 4-5, 16.)

For all the reasons set forth above, the court finds that the entire $70,000 is forfeitable and that Mr. Lustyik and Mr. Thaler are jointly and severally liable to the United States for that amount.

### B.     The Government is Entitled to a $70,000.00 Money Judgment.

"Criminal forfeiture is an *in personam* action in which the forfeiture of and the vesting of title in the United States in the defendant's tainted property is imposed as a punishment against the defendant."  United States v. Jarvis, 499 F.3d 1196, 1203 (10th Cir. 2007).  The criminal forfeiture sanction "'follows the defendant as a part of the penalty'" and imposes on the defendant a continuing obligation to forfeit all proceeds of his criminal activity.  United States v. McGinty, 610 F.3d 1242, 1246 (10th Cir. 2010) (quoting United States v. Hall, 434 F.3d 42, 59 (1st Cir. 2006)).  Accordingly, the Government may obtain a personal money judgment against Mr. Lustyik and Mr. Thaler for the full amount of the criminal proceeds—i.e., $70,000.00.

Because the *in personam* criminal forfeiture is both mandatory and punitive, "'the government need not prove that the defendant actually has the forfeited proceeds in his possession at the time of conviction.'"  Id. at 1246 (quoting Hall, 434 F.3d at 59).  The court must enter a money judgment for the full amount of proceeds of Mr. Lustyik's and Mr. Thaler's criminal activity, "'regardless of whether the specific dollars received from that activity are still

in [their] possession.'" Hall, 434 F.3d at 59 (quoting United States v. Ginsburg, 773 F.2d 798, 802 (7th Cir. 1985) (en banc)).  Indeed, money judgments are appropriate even when the defendant is insolvent and has no assets at all.  McGinty, 610 F.3d at 1246-47.

Mr. Lustyik and Mr. Thaler must forfeit the full $70,000 generated by the conspiracy. The court hereby enters a money judgment against Mr. Lustyik and Mr. Thaler.  As set forth in more detail below, the court finds Defendants Robert G. Lustyik, Jr. and Johannes Thaler jointly and severally liable for the full $70,000.00.  Each Defendant will receive credit for payments made by the other toward satisfaction of that amount.

## ORDER

For the foregoing reasons, the court makes the findings set forth below and ORDERS as follows:

Because Defendant ROBERT LUSTYIK, JR. has been found guilty of one count of conspiracy to commit bribery and obstruction of justice in violation of 18 U.S.C. §§ 371, 201, and 1503, seven counts of honest services wire fraud, in violation of 18 U.S.C. §§ 1343 and 1346, and one count of obstruction of the due administration of justice, in violation of 18 U.S.C. § 1503(a)[8];

Because Defendant JOHANNES THALER has been found guilty of one count of conspiracy to commit bribery and obstruction of justice in violation of 18 U.S.C. §§ 371, 201, and 1503;

Because the Indictment contained a forfeiture allegation notifying the Defendants that, upon conviction of any of the offenses charged in Counts One through Ten of the Indictment, Defendants

---

[8]In addition to those charges, Robert Lustyik has been found guilty of one count of obstruction of an agency proceeding in violation of 18 U.S.C. § 1505, but the forfeiture allegation in the Indictment does not refer to this charge.

12

shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offense;

Because the court finds, by a preponderance of evidence, that the factual basis of conviction supports a finding that Defendants obtained $70,000.00 in proceeds as a result of their commission of the offenses of which they have been convicted; and

Because the United States has filed a Motion for Preliminary Order of Forfeiture (Doc. No. 930) seeking the proceeds of the Defendants' crimes and a personal money judgment against the Defendants in the amount of $70,000.00, for which they would each be jointly and severally liable;

it is hereby ORDERED, ADJUDGED, AND DECREED that:

1.      Pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), Defendants Robert Lustyik, Jr. and Johannes Thaler shall forfeit to the United States any property, real or personal, which constitutes or is derived from proceeds traceable to the crimes for which the Defendants have been convicted.

2.      A money judgment in the amount of $70,000.00, jointly and severally with any forfeiture ordered against Robert Lustyik, Jr. and Johannes Thaler, shall be included in the sentence of the Defendants. The United States may take steps to collect said judgment from any assets of the Defendants, including in accordance with the substitute property provisions of 21 U.S.C. § 853(p). Any net amounts recovered by the United States from the Defendants under paragraph 1, above, shall also be credited against their forfeiture liability.

3.      Pursuant to Fed. R. Crim. P. 32.2(b)(3), the Attorney General (or a designee) is authorized to conduct any discovery that may assist in identifying, locating, or disposing of property subject to forfeiture, or any property that may be forfeited as substitute assets or otherwise used to

13

satisfy the money judgment.

4.      The court shall retain jurisdiction to enforce this order, and to amend it as necessary pursuant to Fed. R. Crim. P. 32.2(e).

5.      Pursuant to Fed. R. Crim. P. 32.2(b)(4), the Preliminary Order of Forfeiture, as modified in this Order of Forfeiture, shall become final as to the Defendants upon sentencing and shall be made part of the sentence and included in the judgment.

DATED this 30th day of March, 2015.

BY THE COURT:

TENA CAMPBELL
U.S. District Court Judge

14